STATEMENT OF FACTS.
This is the second time this case has been before this court. The record of the previous trial will be found reported in13 Okla. 670, 76 P. 226. The original petition filed by Mary Massey alleged that she was the owner and in possession of lots seven and eight, in block sixty-one, in that subdivision of the city of Guthrie known as "Capitol Hill," and that the defendants Nellie Brown and D. G. Tutt claimed an interest or estate in said property, but that such estate was inferior to the title of the plaintiff, and by said petition she asks that her title be quieted. Service by publication was had, and a judgment by default rendered against Brown and Tutt. Within the time limited by statute, the defendants Brown and Tutt and L. N. Beadles filed an application to open the judgment and be allowed to plead, alleging that Brown and Tutt had sold their interest in the property to Beadles. The answer accompanying said motion for leave to plead was as follows:
"In the District Court of Logan County, Oklahoma Territory.
"Mary Massey, Plaintiff, "v. "Nellie Brown and D. G. Tutt, Defendants, and L. N. Beadles, as Successor in Interests to Defendants, Defendant.
"Answer to Petition of Plaintiff.
"Comes now the defendants and L. N. Beadles, successor in interest to defendants, permission of the court having been first obtained, and file this their joint answer to the petition of the plaintiff in this cause, and as matters of defense thereto charge and allege facts as follows, to-wit:
"(1) These defendants and their successor in interest in and to the real estate involved in this action deny each and every material allegation of fact and conclusion of law contained in said petition, except those that may be hereinafter especially admitted.
"(2) The defendants, Nellie Brown, D. G. Tutt, and L. N. Beadles, admit that they have, hold, and claim an adverse interest to plaintiff in lots numbered seven (7) and eight (8) in block numbered sixty-one (61) in that subdivision of the city of Guthrie, Logan county, Oklahoma Territory, known as `Capitol Hill.' *Page 484 
"(3) That defendants Nellie Brown and D. G. Tutt, at the time of the commencement of this action, and at the time of the issuance of the tax deed hereinafter referred to, and for a long time prior thereto, and at all times up to the date of filing the petition in this cause, were the absolute owners of the fee simple title to the above described real estate; and were during the whole period of said time in the actual possession of said real property, and remained undisturbed in their said possession.
"(4) That thereafter, on, to-wit, the 14th and 15th days of May, A.D., 1902, these defendants, for a valuable consideration, sold and conveyed all of their said title to said real property to defendant L. N. Beadles.
"(5) That on, to-wit, the 7th day of September, A.D., 1894, the county treasurer of Logan county, without authority of law, pretended to sell at tax sale the real estate involved in this action, for the alleged non-payment of taxes for the year A.D., 1893, at which time these defendants were the owners and in possession of said real estate, and said county treasurer did on said date make certificates of purchase to said property included to the county of Logan, Oklahoma Territory. And thereafter said county treasurer, without any authority of law, on, to-wit, the 10th day of May, 1898, pretended to re-sell said property for the sum of $15.85, the amount of taxes, charges, penalties, and costs alleged to be due, and for which sum said property together with other property described in said deed was bid in by the county treasurer aforesaid, in the year A.D. 1894, aforesaid, for the further sum of money alleged to be subsequent taxes accrued and due thereon. While said property was held by the county of Logan under the sale aforesaid, the sum of $__________. And said treasurer did on the 10th day of May, A.D., 1898, again sell or pretend to sell said real estate with other real estate described in the deed to one S. S. Lawrence for the alleged sum of $52.00 cash; and did on the 13th day of May, 1898, execute and deliver to said S. S. Lawrence a tax deed for said real property herein described together with other property described in said deed. And said tax deed was by the said S. S. Lawrence placed on record on said last mentioned date. A certified copy of said tax deed is hereto attached and made a part of this answer.
"(6) That thereafter said S. S. Lawrence attempted to convey said property by deed to the plaintiff in this action, Mary *Page 485 
Massey, and upon which several pretended and illegal conveyances she brings this suit, and bases her claim to title to the real property herein described.
"(7) That said tax deed upon which the claims of plaintiff is based was placed on record in Logan county, Oklahoma Territory, on the said 13th day of May, A.D. 1898, and during the whole of the intervening time between the recording of this deed and the filing of this action by plaintiff, on, to-wit, the 28th day of January, A.D. 1902, these defendants were in possession of said real estate, and neither the purchaser at said pretended tax sale or his assign, the plaintiff herein, ever at any time brought suit for possession or otherwise took possession of said real estate, by reason of which, this action is barred by the statutes of limitation of the territory of Oklahoma, and said tax deed by operation of said statute become null and void.
"(8) That said tax deed upon which plaintiff herein claims title is void upon its face for the following, among other reasons: Said tax deed recited only three (3) certificates of purchase was issued by the treasurer of Logan county at said pretended sale for the following described property alleged to have been sold to said county, to-wit: For lots numbers three (3) and four (4) in block 53 and lots seven (7) and eight (8) in block number sixty-one (61) in the subdivision of the city of Guthrie known as `Capitol Hill'; and because said tax deed did not affirmatively show upon its face that said lots described therein were separately sold, and does not show for what sum said several lots separately sold for, and because said deed shows upon its face that said lots were collectively sold for the gross sum of $15.85, the amount of taxes due thereon, and because said deed does not recite that said lots were, prior to the sale thereof, legally advertised for sale for the period of time required by law; and because said deed does not recite that said property has been separately assessed and charged or extended as required by law; and because said tax deed shows upon its face that said property was sold for non-payment of taxes subsequent to the pretended sale to the county of Logan on the 7th day of Sept., 1894, and prior to the alleged re-sale in 1898, during which period said property was not taxable, and said sale therefore is contrary to law. That said tax deed and all proceedings prior to the issuance thereof are void for the following reasons: Because said property was sold for the non-payment *Page 486 
of the following illegal taxes levied, assessed, charged, and extended for the year 1893, to-wit, the following illegal levy: `For county general purposes, including two (2) mills for the support of the poor, and contingent expenses, six mills on the dollar valuation, for county road and bridge purposes five (5) mills on the dollar valuation. For separate schools one (1) mill on the dollars valuation, all of which levies of taxes for said year A.D., 1893 are illegal and void, and for non-payment of said illegal taxes said property was sold, and for the reason that county clerk never certified said taxes down to the treasurer of Logan county with his warrant to collect the same for the said year A.D. 1893.
"(9) That the defendants have tendered to plaintiff all taxes, penalties, interest, costs, and charges due and accrued on said lots described in said tax deed, but she fails and refuses to accept the same, and defendants now tender into court for the use and benefit of said plaintiff for said taxes, interest, penalties, charges and costs.
"(10) Wherefore defendants pray that the tax deed issued herein and the conveyance thereon from Lawrence to plaintiff, each be declared null and void, and that the title to said real estate be quieted in these defendants, and for costs of suit, and all proper relief. "BUCKNER SONS, "Attorneys for Defendants."
The district court refused to allow this motion. Brown and Tutt and Beadles appealed. The order of the district court was reversed, and the cause remanded with instructions to re-open the judgment and allow the plaintiffs in error to defend and to take such further proceedings as would accord with the supreme court decisions, and be consistent with right and justice in the premises. The mandate was filed in the district court of Logan county. In pursuance of the mandate, the original judgment of default was opened. The defendants were allowed to defend in said cause in accordance with the answer on file. But, in the same order opening the judgment and permitting the defendants to file their answer, the court made an order on the motion of the plaintiff, dismissing plaintiff's cause of action. At the time of the order of dismissal no reply or other pleading had been filed by Mary *Page 487 
Massey to the answer on file in said cause. Subsequently the defendants Brown, Tutt and Beadles, the present plaintiffs in error, filed a motion for judgment on their answer and cross-petition. The court overruled this motion, to which the present plaintiffs in error duly excepted, and bring the case here for review
Opinion of the court by
The assignments of error are two. First. That the court erred in refusing the defendants' motion for judgment, to which refusal the defendants excepted at the time. Second. That the court erred in ruling that the defendants' answer did not contain matter entitling them to affirmative relief, and in holding that the plaintiff had the right to dismiss the entire action, to which ruling of the court these plaintiffs in error duly excepted at the time.
It is apparent from reading the answer above set out that affirmative relief is claimed. The answer in plain and concise language sets up the facts that the plaintiff's tax deed, under which she claims title, is void; that plaintiffs in error have title in themselves; and the prayer is that the tax deed be declared null and void, and that the title to the real estate be quieted in these defendants. Now, we take it that it is immaterial what particular title the pleader may give to his pleading, or what he may call it, whether an answer or cross-petition; if the facts pleaded are sufficient to authorize the granting of affirmative relief, and affirmative relief is prayed for by the answer, then it is the duty of the court to treat it as a cross-petition, regardless of what the pleader may call it. Such seems to have been the holding of the California supreme court in the case of Meeker v. Dalton,75 Cal. 154, 156, 16 P. 764.
"It is immaterial what the defendant calls his pleadings, whether he designates it as an answer or cross-complaint. Its character will be determined by the court. It is the facts set up in the pleadings which make it an answer or cross-petition." *Page 488 
And in Kimball v. Connor, 3 Kan. 414, the Kansas supreme court say:
"The answer of Starks being sufficient, in substance, for the relief demanded, the court would not require the filing of a cross-petition in form, but would treat the answer as such petition and grant all just relief demanded."
This Kansas decision was a construction of the Kansas code on this subject, and was rendered prior to our adoption of the code, and consequently was adopted by this territory with the adoption of the code.
This identical answer was before this court and passed upon by this court as to its effect, and it was held that, if the defendant could establish the matters alleged in this answer, the tax deed was void. 13 Okla. 670-688, 76 P. 226. The answer concludes with a prayer that is affirmative in its character; that is, that the tax deed issued herein and the conveyance thereon from Lawrence to plaintiff each be declared null and void, and that the title to said real estate be quieted in these defendants, and for costs of suit and all proper relief. The answer sets up the particulars wherein the plaintiff's tax deed is void and asks for the affirmative relief of having it declared void and the title vested in defendants. It certainly seems to us that, if this language does not allege affirmative matter, we are at a loss to know how an answer could be so framed as to ask for affirmative relief. Our statute (chapter 24, article 1, section 1, Session Laws of 1899), which seems to us conclusive on this subject, provides:
"That a plaintiff may, on the payment of costs and without any order of the court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss his action against *Page 489 
the plaintiff, without an order of court, at any time, before the trial is begun, on payment of the costs made on the claim filed by him. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action. Such dismissal shall be in writing, and signed by the party or his attorney, and shall be filed with the clerk of the district court, the judge or clerk of the probate court, or the justice, where the action is pending, who shall note the fact on the proper record: provided, such dismissal shall be held to be without prejudice, unless the words, `with prejudice,' be expressed therein."
Section 4289 of the Statutes of 1893 provides as follows:
"In any place where a set off or counterclaim has been presented, the defendant shall have the right of proceeding to the trial of his claim, although the plaintiff may have dismissed his action or failed to appear."
In the case of Venable v. Dutch, 37 Kan. 515, 15 P. 520, the Kansas supreme court say in the syllabus:
"1. Where a plaintiff files a petition in ejectment, and defendant in his answer, in addition to a general denial, states he is in possession of the same land, and claims to be the owner thereof by virtue of a tax deed and asks that his title thereto may be quieted against plaintiff, that part of his answer claiming title in himself and asking affirmative relief is a counterclaim.
"2. In such an action, when the plaintiff dismisses his cause of action, the defendant has the right to proceed to the trial of his claim, for the purpose of determining his interest in the land, as against the plaintiff. He then assumes all the burdens of a plaintiff, and is entitled to his rights, so far as amending his pleadings is concerned."
Now, under the provisions of our statutes, and under the holdings of the Kansas supreme court under an exactly similar statute, it is apparent that, while the plaintiff had a right at any time before final judgment to dismiss his action, it was not error on the part of the court to allow the plaintiff to dismiss so far as his petition was concerned, but the defendant, having filed an answer alleging facts sufficient to warrant, and having asked for affirmative *Page 490 
relief, had the right to proceed with the case to final judgment so far as affirmative relief is concerned, and to have all the aid and assistance from the court which was necessary to secure such relief as he was entitled to under the pleadings. It is insisted by counsel for defendant in error that no exceptions were saved to the ruling of the court sustaining the motion of plaintiff to dismiss her action. We take it that it is immaterial whether exceptions were saved to this or not, as the dismissal of the case by the plaintiff under our statute would not affect or jeopardize the rights of the defendant after they had filed an answer containing affirmative matter and asking for affirmative relief. In other words, it is immaterial to defendants whether she dismissed her case or not, as under the law they had the right to proceed to final judgment so far as affirmative relief is concerned.
Now, it is apparent from this record that at the time the motion was made for judgment on the affirmative allegations of the defendants' answer, that such allegations were in no way denied. The answer was not attacked by any motion to separately state and number, or by any demurrer, neither was any reply filed. No pleadings of any kind or character were filed by the plaintiff whereby the affirmative allegations of the defendants' answer were denied. Section 4006 on page 782, Statutes of 1893, Oklahoma, contains this provision:
"Every material allegation of the petition, not controverted by the answer, and every material allegation of new matter in the answer, not controverted by the reply, shall, for the purposes of the action, be taken as true. * * *"
In the case of Ballinger v. Lantier, 15 Kan. 458, the Kansas supreme court say:
"The answer of the defendant, we think, was also sufficient; and, as it alleged some new matter constituting a defense to the plaintiff's petition, we think it needed a reply from the plaintiff."
Now, it seems to us that, when this motion for judgment on the pleadings was filed, the original cause of action as described *Page 491 
in the petition having been dismissed, no reply of any kind having been filed, no demurrer and nothing which in any way controverted the allegations of the answer, under the plain provisions of our statute it then became the duty of the court to sustain this motion. But we are inclined to the opinion in the administering of exact justice between the parties the trial court could have the right to exercise some discretion in the granting or refusing of this motion. The circumstances of a case might be such that exact justice would require that the party who was in default of a reply should have the right to make such reply out of time. These affirmative allegations of the answer were sufficient, if answered, to raise an issue. That issue, if sustained on the part of the defendants, was in our judgment, sufficient to have warranted the giving of the relief sought, and the court, in the exercise of sound discretion, should have the right to compel the party making the allegation in the answer to prove the issue, and for this purpose should have the right to grant the plaintiff leave to file a reply in the nature of an answer, to raise this issue, and, when raised, to have it tried and decided by the court. But we think it was the plain duty of the court either to have sustained this motion for judgment on the pleadings, or to have ruled the plaintiff to file a reply in the nature of an answer. And, if such reply was filed, and such issue raised, to hear the evidence and try and determine this issue.
A refusal to grant the prayer of the motion for judgment on the pleadings, without making any order on the plaintiff to file a reply, and without putting the party making the motion in a position that he could secure from the court the rights to which he was entitled, was error for which this case should be reversed, which is accordingly done, at the costs of the defendant in error, with directions to the district court to rule the plaintiff to file a reply in the nature of an answer to the affirmative allegations of the answer within a short day to be named by the court, and, if such answer is filed, to hear the evidence and try and determine the *Page 492 
issues, and, in default of such answer, to render judgment for the defendants on the pleadings.
Burford, C. J., who presided in the court below, not sitting; Pancoast and Garber, JJ., absent; all the other Justices concurring.